JAMES STEVENS, Plaintiff in error, and below, *v.* WILLIAM WYLIE, Defendant in error, and below.

1. It is immaterial whether a survey found in a book of original surveys of a deputy surveyor is in his own handwriting or not; being done under the authority of the officer, whether by his own hand or by that of another, it is his act.

2. The book of a deputy surveyor, in which a survey was entered, is not evidence, standing alone, that he was bound to return the survey. He was not bound to do so unless requested by payment of his fees; and, even if they were paid, the law will not tolerate unreasonable negligence in him for whom the survey was made, or in those claiming under him.

3. It is error to instruct a jury, that land which had been patented for fifty years was to give way to a survey not returned.

ERROR to the Common Pleas of Washington county.

This was an ejectment for eight and a half acres of land. The material facts in the case are sufficiently stated in the charge of the court below, and in the opinion of this court.

On the trial below, Ewing, President, charged as follows:

"The plaintiff holds the title of David Redick, and the defendant that of Thomas Stokely; and the question is, which is the better. About some facts there is no dispute. It is admitted, that the surveys and patents of both parties cover the land in dispute; and that there has been a continuous occupation of both tracts from the time of the respective surveys. It is also an admitted fact, that at the time of said surveys, David Redick was a deputy surveyor for the county;

and that the survey of Thomas Stokely is entered in his book of official surveys, in page 167. It is matter in dispute, in whose handwriting that entry is made. This, however, is wholly immaterial, because it was done under the authority of the officer; and whether done with his own hand, or by that of another, it is his own act. There is no evidence of the time of the first improvement on either tract, and for all purposes, we must take the commencement of their respective titles to be the date of their several warrants. The plaintiff's warrant is dated September 7th, 1786, and his survey was made July 29th, 1787. The defendant's warrant is dated September 24th, 1785, and his survey is dated June 2d, 1787. It appears, therefore, that both the warrant and the survey of defendant are earlier than the plaintiff's. His title is therefore the better one, unless other circumstances deprive him of this preference. It is contended that he is deprived of this preference, by neglect to have his survey returned. But whose duty was it to make return of this survey? Why undoubtedly David Redick's. Shall he therefore take advantage of his own wrong? Certainly not. But it is further contended, that the plaintiff has gained the better title by possession. The land in dispute is wholly woodland, and until within twenty-one years was unenclosed. Whoever therefore had the legal title had the possession, and no occasional acts of trespass by the party having the defective title would give him an advantage, or transfer to him the exclusive possession; nor will any acts or omissions of either party, unless amounting to an abandonment of his claim, or consent to an agreed line, have any effect upon his previously existing title. The man, who has title by warrant and survey, is not to be presumed to abandon his claim without clear and satisfactory proof. Nor can he be presumed to have agreed to a consentable line, without the like clear and satisfactory evidence. Is there then any such clear and satisfactory proof, that Stokely abandoned his right to the land in dispute; or, what amounts to the same thing, that he agreed that the line of the Redick survey should be the agreed line between him and Redick? This is a question of fact for you. Again, it is contended, that the plaintiff has acquired the title by twenty-one years' exclusive possession. This is also a question of fact for the jury *to decide,* under the principles above stated. Did the plaintiff enclose the land in dispute, or any part of it, twenty-one years before the first ejectment? If so, he is entitled to recover whatever he had thus enclosed. If he did not, he cannot recover, unless you find that Stokely abandoned the land, or agreed to Redick's line, which is the same thing. When Redick discovered the interference between Stokely's and his own survey, he might in a reasonable time have had

the surveys corrected if he had the better title by prior improvement; but after twenty-one years from Stokely's survey, his mouth is closed for ever.

A verdict for the defendant was rendered, and judgment thereon; when this writ of error was sued out, and in this court the following, among other errors, were assigned:

3. The court erred in saying, that it was immaterial whether the entry in the survey book was made by David Redick, or by another.

5. There was error in saying, the title of the defendant was the better one, &c.

6. There was error in instructing the jury, that David Redick was bound to return Stokely's survey.

*Williams,* for the plaintiff in error, cited Sergeant's Land Laws, 131, 132, 133; 1 Penna. Rep. 74; Id. 448; 2 Penna. Rep. 396; 2 Smith's Laws, 255.

*Henderson,* contrà.

There was no error in the court in instructing the jury, that the title of the defendant was the better one, &c.   The warrant and survey of Stokely were both prior to that of Redick, and he, Redick, having fixed the line between the parties, he and all others claiming under him are bound by it.   Dr. Stevens married the daughter of Mr. Redick in 1818, and became the owner of the Redick farm in that way.   The survey made on 2d June, 1787, put Stokely in possession of the land in dispute; that possession continued until the fall of 1821, or the spring of 1822, a period of about thirty-five years.

If there was error in the 6th exception, it was an immaterial one. The court might have told the jury, that a return of the survey was not necessary as between the parties.

There is a marked distinction in relation to surveys, between the actual settler and one who takes up vacant and unimproved land by warrant.   In the case of the settler, all that is necessary is to have his bounds defined.   It is not necessary to have an official survey made. Sergeant's Land Laws, page 145.   If an actual settler has his boundaries defined, his title is good against all the world except the Commonwealth.   In case of vacant land taken up by warrant, the case is different.   The holder of the first warrant must use reasonable diligence; he must have his survey made, and, in case the deputy neglects to return it, he must show that the fees were paid, and if he does not, a subsequent writ and survey and return will prevail.   This distinction is well understood, and the authority referred to above is full on that subject.

There was no laches in the defendant, in relation to the proceedings before the board of property; the proceedings were ex parte. Mrs. Frances Wilson, the daughter of Thomas Stokely, was the owner of the land at the time. She resided in Steubenville, Ohio.

Dr. Stevens, it appears, served a notice on John H. Ewing, Esq., and was told by Mr. Ewing at the time, that he was not the agent. Mr. Ewing says he wrote to Gen. Samuel Stokely, (the brother of Mrs. Wilson,) who lived in Ohio, but he does not know that he ever got the letter. No person appeared before the board of property for Mrs. Wilson, as the record shows. Had the title of Mrs. Wilson been before the board, I have no doubt the decision would have been in her favour.

E. G. Creacraft, Esq., the deputy surveyor, returned the survey for Mrs. Wilson on the 11th of June, 1841, and a patent issued to her for the land in dispute, 179 acres 133 perches, and the allowance. There was an interference with another survey, which was the reason why the survey fell short of the one made by Redick, on the 2d June, 1787.

The opinion of the court was delivered by BURNSIDE, J.

All the errors assigned in this case are either abandoned, or are immaterial, except the 5th and 6th, and they are the only points I deem worthy of consideration. I will consider them together.

It has ever been the law of Pennsylvania, that the person who obtains a warrant is bound to have a survey made and returned to the land office in a reasonable time, or account for the delay. Reasonable diligence is a duty which the law imposes on the warrant holder. In Zerbe *v.* Shall, 4 Watts, 138, it was settled, that negligence respecting a return of survey, where the fees are not paid, is imputable to the owner; if the fees have been paid in the first instance, it is imputable to the deputy surveyor. But if no return be made for twenty-nine years, the negligence will be imputed to the owner. On examining numerous cases decided on this point, it will be found, that negligence in not procuring a return of survey will be imputed to the owner, in a much shorter period than twenty-nine years. The warrants of both parties called for early improvements; but neither gave evidence of an improvement anterior to his warrant; nor was it material. Many years since, both took possession and improved their tracts; the eight and a half acres in question was claimed by both parties, but is still in woods. The warrant of the plaintiff is dated in 1786, survey and return in 1789, and patent in 1787. The defendant's warrant is dated in 1785, survey in 1787; but not returned until

1841. E. G. Creacraft, the deputy surveyor, swears, that he made a survey of the Stokely lands, on the 11th June, 1841. He corrected the old survey. He included the disputed land, but he excluded the Hoge land, which was in the old survey. It is to be regretted that he did not further correct the survey, and exclude the land in question which was within the plaintiff's survey and patent. The land in dispute had been patented for more than half a century before the defendant had a return on his warrant into the land-office. To account for this delay, the defendant gave evidence that at the time the surveys were made, David Redick was one of the deputy surveyors of Washington county; and that the survey of Thomas Stokely was found in a book of original surveys that had been in Redick's office. In charging the jury, the court said: "It is matter of dispute in whose handwriting the entry is made. This, however, is wholly immaterial, because it was done under the authority of the officer; and whether done with his own hand or that of another, it is his own act." I agree, it was immaterial in whose handwriting the survey of Stokely was in Redick's book. The court further instructed the jury: "It is contended that the Stokely warrant and survey being the oldest, he is deprived of this preference by neglect to have his survey returned; But whose duty was it to make return of this survey? Why, undoubtedly David Redick's. Shall he therefore take advantage of his own wrong? Certainly not." There is no evidence in the paper book, that either Thomas Stokely, or any person claiming under him, paid Redick the fees. A deputy surveyor is not bound to return a survey until the fees are paid, or offered to be paid; nor is there evidence in the cause that he was ever requested to return it. The court gave an effect and weight to the book that the law will not authorize. The book is no evidence standing alone, that Redick was bound to return the survey. He was not bound unless requested by payment of his fees. But suppose his fees had been paid, the negligence of Stokely and those claiming under him is beyond all reason, and the law will not tolerate it. Stokely taking possession of his tract and improving it, protected it from new warrants and settlers. If a deputy surveyor refuses to return a survey, the law gives a speedy and adequate remedy; an application to the surveyor-general will soon produce a return, or a removal from office. There is no evidence in the case to show, that Thomas Stokely, or those who have since claimed the warrant, ever took a single step, after the survey was run on the ground, to procure a return of the survey. To instruct a jury, that land which had been patented upwards of fifty years was to give way to a survey not re-

turned was manifest error.   The court ought to have instructed the jury that the plaintiff was entitled to a verdict.

.   . Judgment reversed, and a venire de novo awarded.